IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



MELANIE J. SEPMOREE,

Plaintiff,

v.  Civil Action No. 2:14cv141

BIO-MEDICAL APPLICATIONS OF VIRGINIA, INC.,

Defendants.

### OPINION AND ORDER

This matter is before the Court on Defendant Bio-Medical Applications of Virginia Inc.'s ("Defendant" or "Bio-Medical") Motion to Dismiss, Doc. 5, and Plaintiff Melanie Sepmoree's ("Plaintiff" or "Sepmoree") Motion for Leave to File a First Amended Complaint, Doc. 12. Because the issues are adequately addressed in the briefing, a hearing will not aid the decisional process. For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion to Amend, Doc. 12, and **DENIES** Defendant's Motion to Dismiss as moot, Doc. 5.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

#### a. Factual Background[2]

This defamation action arises out of a soured employment relationship between Plaintiff and Defendant. Plaintiff is a registered nurse who was employed by Defendant from April 24,

---

[1] Because a motion for leave to file an amended complaint is futile if it would not survive a motion to dismiss, the facts found in this section will be taken from the proposed Amended Complaint.

[2] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motions. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

2011 to November 18, 2013. Am. Compl. ¶ 10. Plaintiff has never been convicted of a felony, nor been involved in criminal activity. Id.

On or about November 19, 2013, one of Defendant's employees, Heather Conley, drafted a document containing the following statements:

> (a) That Plaintiff had "[i]nstructed CCHT H. Conley and several others to "make it hurt" when cannulating [Patient, S.A.] shortly after [Plaintiff had] accus[ed] [Patient, S.A.] of inappropriately touching her'"
> (b) That plaintiff had "stated that [patient, J.G.] 'just needs a little bleach in his lines'", implying that a patient should be murdered;
> (c) That Plaintiff had murdered her mother, by stating that Plaintiff had "[s]tated that when she felt it was time for her mother to 'go' she took care of it by overdosing her on morphine.";
> (d) That Plaintiff had stated in reference to a patient, [A.W.], "All she needs is a good shot of air. That'll take care of her", implying that a patient should be harmed or murdered;
> (e) That Plaintiff had "[r]eferred to [patient, L.J.] as a 'drug addicted cross dresser'"
> (f) "When [patient, M.J.] expired [Plaintiff] stated "Well isn't it about time?"
> (g) That Plaintiff had "[r]eferred to [patient, K.D.] as a 'legless queen who just wants attention'";
> (h) That Plaintiff had "[s]tated that [patient, G.L.] is a 'faking hypochondriac' who since she was a nurse should now [sic] how to do it better."

Id. ¶ 11 (quoting Id., Ex. 1). Plaintiff alleges that these statements were false. Id. Conley published these statements on December 4, 2013 and December 5, 2013 by e-mailing them to Defendant's employees Denise Overturf, Francine McSimmons, Glenda James, and other unidentified individuals, and by publishing them on Defendant's computer network and training computer, which is accessible to all of Defendant's employees. Id. ¶ 12. These statements were made one day after Plaintiff's employment with Defendant ended, and were allegedly post-hoc justifications to support Plaintiff's termination. Id. ¶ 19. Overturf understood these statements to refer to Plaintiff. Id., Ex. 4.

On November 5, 2013, Plaintiff was issued a Corrective Action Form which states that on October 18, 2013,

> Ms. Hall[3] and 2 other employees (the secretary and a PCT) took it upon themselves to investigate whether an employee who was on sick leave was still hospitalized. Ms. Hall was sitting with the staff members at the desk when they decided to call the hospital patient information line to see if the employee was still inpatient. She was the team leader and should have made her coworkers aware that this behavior was unprofessional and an invasion of privacy. She instead encouraged it. Ms. Hall discussed on the clinic floor her displeasure that she had to rearrange her schedule to accommodate the needs of the unit because this co-worker was out sick [sic] Ms. Hall volunteered to rearrange her schedule, in spite of my telling her it was not necessary. There was no reason any staff had to call to check on the status of the employee who was out sick, because she had made contact with me and updated me on her status. I explained to Ms. Hall that this was unprofessional and spoke to her level of credibility and overall trustworthiness. Because of her continued level of unprofessionalism and inability to supervise and direct patient care staff appropriately, we will be issuing Ms. Hall a final written warning.[4]

Id., Ex. 3; see also id. ¶ 13. Defendant allegedly published this statement by filing it in Plaintiff's personnel file. Id. ¶ 14. Plaintiff alleges this incident never happened. Id. ¶ 17. Plaintiff further alleges that McSimmons failed to ascertain the truth or falsity of the statements in the Corrective Action Form, and exhibited hostility and animus to her during the course of Plaintiff's employment. Id. ¶ 20.

Plaintiff alleges that all the statements have subjected her to ridicule and scorn. Id. ¶ 21. These statements are attributed to Defendant because its employees made them within the scope of their employment. Id. ¶ 23. Plaintiff's Complaint, as well as the proposed First Amended Complaint, contains three counts: defamation per se, defamation, and defamation per quod.

---

[3] Plaintiff also goes by Melanie Hall.
[4] In support of Defendant's opposition to the Motion for Leave to File a First Amended Complaint, Defendant submitted an affidavit from its Director of Operations Glenda T. James stating that Plaintiff's Exhibit 3 is incomplete because it did not include the first page of the document. Doc. 14-1 at 1. The first page includes three more incidents in which Plaintiff was warned by her supervisors of unprofessional conduct, including where Plaintiff allegedly admitted that she was spreading a rumor about a staff member purposely setting out improper needles and dialyzers. Id. at 3. Because the Amended Complaint references the Corrective Action Form, it is proper for the Court to consider the complete form that Defendant has submitted. Harrison v. U.S. Postal Service, 840 F.2d 1149, 1152 n.7 (4th Cir. 1988).

3

### b. Procedural History

On April 7, 2014, Sepmoree filed the original Complaint in this action. Doc. 1. Defendant was served on May 28, 2014. Doc. 3. Defendant filed its Motion to Dismiss on June 18, 2014. Doc. 5. Plaintiff responded in opposition on July 2, 2014. Doc. 8. Defendant filed its reply brief on July 10, 2014. Doc. 9.

On July 21, 2014, Plaintiff filed her Motion for Leave to File a First Amended Complaint. Doc. 12. Defendant responded in opposition on August 4, 2014. Doc. 14. Plaintiff filed her reply brief on August 11, 2014. Doc. 15.

## II. LEGAL STANDARDS

### a. Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In deciding the motion, a court may consider the facts alleged on the face of the complaint, as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §

1357 (1990)). The court may look to documents attached to the Complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

### b. Motion for Leave to File an Amended Complaint

If a motion to amend is filed more than twenty-one days after a responsive pleading or motion under Rule 12(b) is served, either leave of court or the consent of the opposing party is required. Fed. R. Civ. P. 15(a)(2). The courts are instructed to "freely give leave when justice so requires." Id. Thus, leave to amend a pleading should only be denied when (1) the amendment will prejudice the defendant; (2) the moving party has acted in bad faith; or (3) the amendment would be futile. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). An amendment would be futile if it fails to state a claim under the Federal Rules of Civil Procedure. See Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

### III. ANALYSIS

In its Motion to Dismiss, Defendant argues that the original Complaint contains insufficient facts to establish any of the elements necessary to state a defamation claim. Doc. 6 at 4. Furthermore, Defendant argues that the Complaint fails to plead enough facts to hold Defendant liable for the statements of its employees. Id. at 12–13. In her Motion to Amend, Plaintiff states she has discovered "additional facts" regarding the publication of the defamatory statements. Doc. 13 at 2. Defendant opposes the Motion to Amend on the ground that it is futile because it still fails to state a claim upon which relief can be granted. Doc. 14 at 3. Thus, the Court must determine if the Amended Complaint meets the standards set forth under Twombly and Iqbal.

As a threshold matter, although Plaintiff alleges three counts: defamation per se, defamation, and defamation per quod, Defendant is correct in that Plaintiff is confusing these as separate causes of action; there is only one cause of action in Virginia for defamation.

To establish a claim for defamation, a plaintiff must show (1) a publication about the plaintiff, (2) of an actionable statement, (3) with the requisite intent. Rodarte v. Wal-Mart Assocs. Inc., No. 6:12cv55, 2013 WL 1898999, at *4 (W.D. Va. May 6, 2013) (quoting Jordan v. Kollman, 612 S.E.2d 203, 206 (Va. 2005)). All defamation is either defamation per se or per quod. Jarrett v. Goldman, 67 Va. Cir. 361, 2005 WL 1323115, at *5 (2005). The difference between the two concerns the second element of a defamation claim: if it falls within the four categories of defamation per se it is actionable without any damages; whereas if it is defamation per quod the statements are defamatory by implication and cause the injured party special damages.[5] See id. (quoting M. Rosenberg & Sons v. Craft, 29 S.E.2d 375, 378 (1944)).

a. **Publication**

"Publication simply means communication of a statement to a third person so as to be understood by that person." Rodarte, 2013 WL 1898999, at *4 (citing Jafari v. Old Dominion Transit Mgmt. Co., 462 F. App'x 385, 390 (4th Cir. 2012)).

> [A defamation] plaintiff must show that the alleged [defamation] was published "of or concerning" him. He need not show that he was mentioned by name in the publication. Instead, the plaintiff satisfies the 'of or concerning' test if he shows that the publication was intended to refer to him and would be so understood by persons reading [or hearing] it who knew him....But if the publication on its face does not show that it applies to the plaintiff, the publication is not actionable, unless the allegations and supporting contemporaneous facts connect the [defamatory] words to the plaintiff.

---

[5] An actionable statement is one that makes the plaintiff "appear odious, infamous, or ridiculous." Verrinder v. Rite Aid Corp., No. 3:06cv24, 2006 WL 2222675, at *2 (W.D. Va. Aug. 2, 2006). It is possible for a statement to be actionable per se but not per quod, if it "bear[s] directly on how the individuals at issue will be seen in the performance of their jobs" but is not necessarily "odious, offensive, or ridiculous." See id. (discussing how a claim may be merely insulting to a layperson, but become actionable when made concerning a professional).

WJLA-TV v. Levin, 564 S.E.2d 383, 390 (Va. 2002) (quoting The Gazette, Inc. v. Harris, 325 S.E.2d 713, 738 (Va. 1985)).

Defendant argues in its Motion to Dismiss that Plaintiff has not pled sufficient facts to establish the publication element relating to the statements made by Conley because (1) Plaintiff does not allege it was directed to a third party, (2) Plaintiff does not allege they were understood by a third party, and (3) the face of the document does not show that it relates to Plaintiff. Doc. 6 at 6. Defendant argues that publication has not been pled regarding the Corrective Action Form "because Plaintiff failed to provide any details as to the time, place or the specific third party who received the communication and whether that third party understood the statement." Id. at 7.

Plaintiff argues that publication was sufficiently pled because the statements made by Conley were accessible to all of Defendant's employees and were "of and concerning" her. Doc. 8 at 7. Plaintiff argues that the statements in the Corrective Action Form were published by placing them in her personnel file. Id. at 8.

In its opposition to the Motion to Amend, Defendant appears to concede that the Amended Complaint cures any defect as it relates to Conley's statements, but that the Amended Complaint still fails to plead adequate facts to show that the Corrective Action Form was published. Doc. 14 at 5. While Defendant also argues that the Motion to Amend is futile because Plaintiff cannot overcome the qualified immunity defense to defamation, qualified immunity is an affirmative defense, and at the Motion to Dismiss stage, a court may only dismiss "'if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" Rodarte, 2013 WL 1898999, at *7 (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)).

In this case, Plaintiff has pled enough facts to show publication as to Conley's statements. She alleges that Conley not only posted them on a computer accessible by all employees, but that Conley also e-mailed them to numerous employees of Defendant. The Amended Complaint includes a copy of this e-mail, and a statement from one of the employees who understood the statements to refer to Plaintiff. Am. Compl. Exs. 2, 4. Thus, Plaintiff can establish that Conley's statements were published.

Defendant's argument is stronger as it relates to the Corrective Action Form. The only act of publication that Plaintiff alleges occurred when the form was placed in Plaintiff's personnel file. Am. Compl. ¶ 14. The Western District of Virginia has found that publication into a personnel file is enough to establish the publication element at the 12(b)(6) stage.[6] Berry v. General Elec. Corp., No. 7:08cv7, 2008 WL 2726959, at *4 (W.D. Va. July 11, 2008). However, the only people alleged to have seen the form are those who signed the form and thus had an interest in employee discipline.[7] See id. at *4 n.8 (declining to consider the qualified immunity defense because the defendants did not raise it). Unlike in Berry, Defendant has raised the qualified privilege defense, which can be asserted even at this early stage of the litigation. See Taylor v. CNA Corp., 782 F. Supp. 2d 182, 201 (E.D. Va. 2010) ("The publication requirement for defamation requires a dissemination of the statement to a third party where that dissemination does not occur in a privileged context."); see also Verrinder, 2006 WL 2222675, at *3–4 (considering qualified immunity when publication was to employees with interest in the communication).

---

[6] Although Defendant is correct that Berry was a pro se plaintiff, a pro se party is still held to the standards applicable to a Rule 12(b)(6) motion. Taylor v. First Premier Bank, 841 F. Supp. 2d 931, 932 (E.D. Va. 2012). Twombly was decided before Berry, and thus the Berry court was necessarily aware that of the plausibility standard. Twombly, 550 U.S. at 570.

[7] Glenda James signed the form as a witness, so the statement was published to her. Am. Compl. Ex. 3.

8

"The qualified privilege 'protects a communication from allegations of defamation if made in good faith, to and by persons who have corresponding duties or interests in the subject of the communication.'" Rodarte, 2013 WL 1898999, at *7 n.5 (quoting Gov't Micro Res., Inc. v. Jackson, 624 S.E.2d 63, 70 (Va. 2006)). There is no doubt that the employees alleged to see the statements in the Corrective Action Form would have an interest in the matter.[8] However, this privilege can be defeated if Plaintiff can establish that the statements were made with malice. Id. Malice exists where

> (1) the defendant knew the statement was false or made it with reckless disregard of whether it was false or not; or (2) the statement was deliberately made in such a way that it was heard by persons having no interest or duty in the subject of the statement; or (3) the statement was unnecessarily insulting; or (4) the language used was stronger or more violent than necessary under the circumstances; or (5) the statement was made because of hatred, ill will or a desire to hurt the plaintiff rather than as a fair comment on the subject.

Ortiz v. Panera Bread Co., No. 1:10cv1424, 2011 WL 3353432, at *5 (E.D. Va. Aug. 2, 2011) (quoting Hargrave v. Tignor, 24 Va. Cir. 353, 1991 WL 835120, at *4 (1991)).

At the pleading stage, a showing of malice is satisfactory if Plaintiff alleges "facts showing some greater pattern of animus[.]" Verrinder, 2006 WL 2222675, at *4 (citing Echtenkamp v. Loudon Cnty. Pub. Schools, 263 F. Supp. 2d 1043, 1062 (E.D. Va. 2003). Here, Plaintiff alleges that McSimmons engaged in a consistent pattern of hostile behavior towards Plaintiff; McSimmons informed Plaintiff she had reservations accepting her job because of Plaintiff's employment with Defendant, and that McSimmons has "subjected Plaintiff to name-calling, disparaging remarks, and ... repeatedly calling Plaintiff a liar, untrustworthy, and lacking credibility." Am. Compl. ¶ 20; see also Cashion v. Smith, 749 S.E.2d 526, 533 (Va. 2013) ("Personal spite or ill will, independent of the occasion on which it was made, is certainly one of

---

[8] James is Defendant's Director of Operations. Doc. 14-1. It is unclear what precise role McSimmons has, but the Court can infer from the Complaint she was either Plaintiff's supervisor or a human resources officer; both would have an interest in the statements made in the Corrective Action Form.

the elements that will establish common law malice."). Thus, Plaintiff can establish the necessary facts to show the publication element.

### b. Actionable statement

For a defamatory statement to be actionable, a statement must be both false and defamatory. Jordan, 612 S.E.2d at 206. A statement is defamatory if it "tends to 'harm the reputation of another [so] as to lower him in the estimation of the community or to deter third persons from association or dealing with him.'" Rodarte, 2013 WL 1898999, at *4 (W.D. Va. May 6, 2013) (quoting Cutaia v. Radius Eng'g Intern., Inc., No. 5:11cv77, 2012 WL 525471, at *3 (W.D. Va. Feb. 16, 2012)). Additionally, statements of opinion are generally not actionable. Jordan, 612 S.E.2d at 206. Whether a statement is a fact or an opinion is a matter of law. Id. at 206–07.

> Additionally, some defamatory words are actionable as defamation per se, such as:
>
> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.
> (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society.
> (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.
> (4) Those which prejudice such person in his or her profession or trade.

Tronfield v. Nationwide Mut. Ins. Co., 636 S.E.2d 447, 449–50 (Va. 2006).

Defendant argues in its Motion to Dismiss that Plaintiff fails to show the statements are actionable because Plaintiff did not plead sufficient facts to demonstrate the statements at issue are false. Doc. 6 at 10. However, Defendant makes no mention of this element in its opposition to the Motion to Amend.

All of the statements made by Conley, if false, would indicate that Plaintiff was unfit to perform the job of a registered nurse, or prejudice her by showing her disregard for patient care.[9] Plaintiff alleges that she never made these statements, and this allegation must be accepted as true at this stage. Am. Compl. ¶ 17.

Additionally, the statements in the Corrective Action Form fall within the category of defamation per se. Privacy is important in the medical profession, and the actions contained in the form reflect an unfitness to perform the duties associated with her profession. Verrinder, 2006 WL 2222675, at *2. Furthermore, accusing Plaintiff of behaving in an unprofessional manner would prejudice her in her profession, as it reflects on her ability to supervise employees and patient care. Am. Compl., Ex. 3. Plaintiff again alleges she did not perform the actions contained in the Corrective Action Form. Id. ¶ 20. Thus, if these statements are false, they are actionable as defamation per se.[10]

Moreover, these statements are an actionable statement under defamation and defamation per quod. The Supreme Court of Virginia recently found a statement that "Tharpe told me that Tharpe was going to screw the Authority like he did Fork Pickett" was an actionable statement. Tharpe v. Saunders, 737 S.E.2d 890, 894–95 (Va. 2013). Just like in Tharpe, Plaintiff is alleging

---

[9] The one statement concerning giving her mother morphine, while not prejudicial to her trade, would fall within the second category of defamation per se, as homicide is a crime of moral turpitude. See Parr v. Commonwealth, 96 S.E.2d 160, 163 (Va. 1957) (defining a crime of moral turpitude as "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man") (internal quotation marks and citation omitted).

[10] Plaintiff also argues that the claim she is unprofessional is false. Under Virginia law, a statement must "contain a provably false factual connotation" in order to be actionable. Yeagle v. Collegiate Times, 497 S.E.2d 136, 137 (Va. 1998). While Plaintiff may not be able to prove she is "professional," she can prove that the hospital phone call event did not happen, and thus would sufficiently attack the factual connotation contained in the form. See Raytheon Tech Servs. Co. v. Hyland, 641 S.E.2d 84, 90 (Va. 2007) (holding that factual statements made to support an opinion can be the basis for a defamation action).

Conley has fabricated quotations that injure her reputation. Id. at 894. Thus, Plaintiff has alleged enough facts right now to show an actionable statement.[11]

### c. Intent

Under Virginia law, a private individual such as Plaintiff must make a showing of intent that Defendant published the statement knowing that it was "false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." Harris, 325 S.E.2d at 724–25; see also In re Kanazeh, No. 1:09mc47, 2010 WL 364565, at *5 (E.D. Va. Jan. 29, 2010). However, if the statement made would fall within the qualified privilege, actual malice must be shown. Jackson, 624 S.E.2d at 70–71.

Defendant argues that Plaintiff fails to allege enough facts to show intent as it relates to Conley, and that Plaintiff cannot overcome the qualified privilege as it relates to the Corrective Action Form.

Plaintiff's proposed Amended Complaint does have problems, in that it contains conclusory allegations that this Court need not accept, such as "The statements were made with reckless disregard for their truth or falsity" and that "Conley and McSimmons acted with ... common law and actual malice." Am. Compl. ¶ 18. However, as it relates to Conley, Plaintiff alleges that Conley knew the statements were false. See Andrews v. Virginia Union Univ., No. 3:07cv447, 2007 WL 4143080, at *9 (E.D. Va. Nov. 19, 2007) (finding that an allegation a statement was "bald and unsupported" supported the inference that the statement was made negligently so as to sufficiently allege intent post-Twombly). She alleges a motive for Conley to make the statements, "a history of hostility and animosity," that the alleged document was

---

[11] All defamation is either per se or per quod. Jarrett v. Goldman, 67 Va. Cir. 361, 2005 WL 1323115, at *5 (2005). Thus, ultimately Plaintiff will have to choose a theory of recovery. However, at this stage, Plaintiff is permitted to plead multiple, alternate theories of liability. Fed. R. Civ. P. 8(d).

written one day after Plaintiff's termination, and made to support the employer's defense in Plaintiff's pending unemployment proceedings.[12] Id. ¶ 19.

Furthermore, as discussed in Part III(a), Plaintiff has established enough facts at this stage to show malice as it relates to the Corrective Action form. Thus, Plaintiff's Amended Complaint alleges enough facts to satisfy this element of a defamation action as well.

### d. Respondeat Superior Liability

In Virginia, "'an employer is liable for the tortious acts of its employees if that employee was performing the employer's business and acting within the scope of the employment when the tortious acts were committed.'" Newport News Indus. v. Dynamic Testing, Inc., 130 F. Supp. 2d 745, 750 (E.D. Va. 2001) (quoting Giant of Md., Inc. v. Enger, 515 S.E.2d 111, 112 (Va. 1999)). To be within the scope of employment, an act must be (1) "'expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise wholly from some external, independent, and personal motive on the part of the employee to do the act upon his own account.'" Id. (quoting Kensington Assocs. v. West, 362 S.E.2d 900, 901 (Va. 1987)). Moreover, once an employment relationship is established, "'the burden is on the [employer] to prove that the [employee] was not acting within the scope of his employment when he committed the act complained of, and ... if the evidence leaves the question in doubt it becomes an issue to be determined by the jury.'" Plummer v. Ctr. Psychiatrists, Ltd., 476 S.E.2d 172, 174 (Va. 1996) (quoting West, 362 S.E.2d at 901).

---

[12] Defendant argues that this intent does not suffice because the publication was made two weeks later. Doc. 14 at 5. However, they are close enough in time that the Court can plausibly infer Conley's intent. For example, the history of hostility and animosity would not have changed in the two weeks between the statement being drafted and published, despite the fact that the unemployment proceedings may have already concluded by that point.

Defendant only argues that Plaintiff cannot show that Conley's statements were made within the scope of employment or were published with actual or apparent approval of Defendant. Doc. 6 at 13. Plaintiff has alleged that an employment relationship exists between Conley and Defendant, that Conley used her work computer to draft the document, that she drafted the document in the course of performing her duties, and that the statements were made to further the employer's interest by assisting in the employer's defense of Plaintiff's unemployment proceedings. Am. Compl. ¶¶ 19, 23. This is sufficient at this stage. See Sewell v. Wells Fargo Bank, N.A., No. 7:11cv124, 2012 WL 253832, at *7 (W.D. Va. Jan. 27, 2012) (finding the plaintiff's allegations that "bank employees made several false, factual statements ... that concerned and harmed her or her reputation to bank customers and member of the community" sufficed to show claim for respondeat superior liability at the 12(b)(6) stage); see also Suarez v. Loomis Armored US, LLC, No. 3:10cv690, 2010 WL 5101185, at *3 (E.D. Va. Dec. 7, 2010) (finding one paragraph allegation that employee was servicing an ATM when making the defamatory statement was sufficient to show employee was acting within scope of employment). Thus, because the Motion to Amend is not futile, the Court **GRANTS** the Motion to Amend. Accordingly, Defendant's original Motion to Dismiss is mooted. See Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001).

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion to Amend, Doc. 13, and **DENIES** Defendant's Motion to Dismiss, Doc. 5.

Plaintiff is **ORDERED** to file her Amended Complaint within 10 days of the entry of this Order.

The Clerk is **REQUESTED** to mail a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
September 4, 2014

15