IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**MELANIE J. SEPMOREE,**

    **Plaintiff,**

                            Case No. 2:14-cv-00141-CHM-LRL

v.

**BIO-MEDICAL APPLICATIONS OF VIRGINIA, INC.,**
d/b/a "Fresenius Medical Care Dominion",
    **Defendant.**

## FIRST AMENDED COMPLAINT

COME NOW the plaintiff, Melanie J. Sepmoree, also known as "Melanie Hall" (hereinafter, "Plaintiff" or "Ms. Sepmoree"), by counsel, and moves this Court for entry of judgment in her favor and against the defendant, Bio-Medical Applications of Virginia, Inc., d/b/a "Fresenius Medical Care Dominion," and for her First Amended Complaint states as follows:

### Nature of Action

1. This is an action at law for defamation.

### Parties

2. Plaintiff is a natural person, a private individual and resident of Windsor, Virginia. Prior to the events giving rise to this lawsuit, the plaintiff enjoyed a very good reputation within the community as an honest, law abiding citizen.

3. Defendant, Bio-Medical Applications of Virginia, Inc., d/b/a "Fresenius Dialysis" (hereinafter, "Defendant"), is a corporation incorporated in the State of Delaware, with its principal place of business located at 920 Winter Street, Waltham, Massachusetts 02451.

Defendant owns and operates a dialysis center located at 910 Great Bridge Boulevard in Chesapeake, Virginia (the "Dialysis Center") and serves dialysis patients throughout the Hampton Roads area of Virginia.

4. Defendant is being sued on theories of both direct liability and *respondent superior*. At all times relevant herein, Heather Conley ("Conley"), was employed by Defendant as a Certified Clinical Hemodialysis Technician ("CCHT") at the Dialysis Center. At all times relevant herein, Francine McSimmons ("McSimmons"), was employed by Defendant as Clinical Manager at the Dialysis Center. All acts by Conley, McSimmons, and Defendant's other employees alleged herein were committed within the scope of their employment.

5. The events giving rise to this lawsuit all occurred in this judicial district in the City of Chesapeake, Virginia.

## Jurisdiction and Venue

6. This Court has diversity jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(1), as this action involves citizens of different states, and the asserted rights and interests of the plaintiff in controversy exceed the sum or value of $75,000, exclusive of interest and costs.

7. The causes of action arose from the defendant's acts and omissions in this judicial district.

8. The Defendant is presently conducting, and regularly conducts, substantial affairs and business activity, and did so at all times alleged herein, in this judicial district by its ownership and/or operation of the Dialysis Center in Chesapeake, Virginia that serves dialysis patients throughout the Hampton Roads area of Virginia. In addition, the events alleged herein

occurred in Chesapeake, Virginia, and the causes of action arose from Defendant's acts and omissions in Chesapeake, Virginia.

9. Venue over the claims of the plaintiffs is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) and (a)(2).

### Facts

10. Plaintiff is a Registered Nurse, who has been licensed as a Registered Nurse pursuant to a multi-state compact license, in good standing, for over thirteen (13) years, and in such capacity has performed, among other things, medical or health care services for dialysis patients. Plaintiff was employed by Defendant as a Registered Nurse for approximately two and one-half years, from April 24, 2011 to November 18, 2013, and served as the Charge Nurse or "Team Leader" for Defendant, performing, among other things, medical or health care services for dialysis patients, during such time. Plaintiff is and always has been a law abiding citizen and has no felony record. She was never been involved in any criminal activity.

11. On or about November 19, 2013, Conley falsely stated and implied that Plaintiff was a murderer, had endangered or harmed a plaintiff's health, sought to endanger or harm a patient's health, did not care about patients, and imputed unfitness to perform duties of office and employment for profit and want of integrity in the discharge of those duties, using the following words:

    (a)    that Plaintiff had "[i]nstructed CCHT H. Conley and several others to "make it hurt" when cannulating [Patient, S.A.] shortly after [Plaintiff had] accus[ed] [Patient, S.A.] of inappropriately touching her";

    (b)    that Plaintiff had "stated that [patient, J.G.] 'just needs a little bleach in his

3

    lines'", implying that a patient should be murdered;

(c) that Plaintiff had murdered her mother, by stating that Plaintiff had "[s]tated that when she felt it was time for her mother to 'go' she took care of it by overdosing her on morphine.";

(d) that Plaintiff had stated in reference to a patient, [A.W.], "All she needs is a good shot of air. That'll take care of her", implying that a patient should be harmed or murdered;

(e) that Plaintiff had "[r]eferred to [patient, L.J.] as a 'drug addicted cross dresser'";

(f) "When [patient, M.J.] expired [Plaintiff] stated "Well isn't it about time?"

(g) that Plaintiff had "[r]eferred to [patient, K.D.] as a 'legless queen who just wants attention'";

(h) that Plaintiff "[s]tated that [patient, G.L.] is a 'faking hypochondriac' who since she was a nurse should now [sic] how to do it better."

***See* Exhibit 1 (Document dated November 19, 2013, bearing Bates No. SEPMOREE000064) (redacted).**

  12. On December 4, 2013 and December, 5, 2013, Conley published the defamatory statements alleged in paragraph 11 by e-mailing the statements to Defendant's employee, Denise Overturf, and to others, without a need to know, including, upon information and belief, McSimmons, Glenda James (Defendant's Regional Manager), employees of Defendant's parent and/or related company, "Fresenius N.A.," and Defendant's computer network and training computer, accessible to all employees of Defendant. *See* **Exhibit 2** (December 4, 2013 and

4

December 5, 2013 e-mail chain).

13.     On November 5, 2013 and continuing repeatedly thereafter through, upon information and belief, the date of filing of this First Amended Complaint, McSimmons falsely implied that Plaintiff had violated a patient's privacy rights by seeking to obtain confidential health information protected from disclosure under, *inter alia*, the Non-Disclosure Agreement that Plaintiff signed upon hire by Defendant, a patient's constitutional right to privacy, the provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the HIPAA Privacy Rule, and other applicable state, federal, and foreign laws and regulations protecting the disclosure of confidential health information and the privacy of patients, using the following words:

    a.    that Plaintiff "took it upon [herself] to investigate whether an employee who was on sick leave was still hospitalized,"

    b.    that Plaintiff "was the team leader and should have made her coworkers aware that this behavior was unprofesional [sic] and an invasion of privacy. She instead encouraged it.";

    c.    that Plaintiff's behavior in allegedly "[taking] it upon [herself] to investigate whether an employee who was on sick leave was still hospitalized" was "unprofessional and spoke to her level of credibility and overall trust worthiness.";

    d.    that Plaintiff's behavior in allegedly "encouraging" the behavior of the other co-workers (a secretary and a PCT) was "unprofessional and spoke to [Plaintiff's] level of credibility and overall trust worthiness.";

  e. That Plaintiff's behavior in allegedly "[taking] it upon [herself] to investigate whether an employee who was on sick leave was still hospitalized" and/or "encouraging" the behavior of the other co-workers (a secretary and a PCT) "showed Plaintiff's "continued level of unprofessionalism and inability to supervise and direct patient care staff appropriately."

**See Exhibit 3 (Corrective Action Form dated November 5, 2013, bearing Bates No. SEPMOREE000012).**

  14. On or about November 5, 2013, McSimmons and/or Defendant's Human Resources employees or other employees published the defamatory statements alleged in paragraph 13 by placement and maintenance of the Corrective Action Form in Plaintiff's personnel file. *See* **Exhibit 3** ("**Note:** . . . A copy of this form is given to the employee and maintained in their personnel file.").

  15. By the statements alleged, Conley and McSimmons imputed Plaintiff's commission of criminal offenses involving moral turpitude for which Plaintiff could have been indicted and punished, and also imputed unfitness to perform duties of office and employment for profit and want of integrity in the discharge of those duties. The defamatory statements, individually and taken as a whole, prejudice Plaintiff in her profession, tending to injure her in her employment and profession, and cast her as being particularly unfit to work as a Registered Nurse, Charge Nurse, and "Team Leader."

  16. By making those statements, Conley and McSimmons intended to, and did, charge Plaintiff with being a criminal and being unfit to work as a Registered Nurse, Charge Nurse, and

"Team Leader." The defamatory statements permanently stigmatized Plaintiff as being a criminal.

17. The statements detailed in this First Amended Complaint were made of and concerning Plaintiff, are false, and were false when made. The statements at paragraphs 11(a) through 11(h) are attributed by Conley to Plaintiff, but were never made by Plaintiff; and therefore, are false statements. Also the events or circumstances stated or implied by Conley at paragraphs 11(a) through 11(h) and by McSimmons at paragraphs 13(a) through 13(e), imply or describe events or circumstances that never happened and are therefore false.

18. Conley and McSimmons lacked reasonable grounds for making the statements, implications, and insinuations complained of, and acted negligently in failing to attempt to ascertain the truth thereof. Conley and McSimmons made the statements knowing they were false or with reckless disregard for their truth or falsity. The statements were made with such gross indifference and recklessness as to amount to a wanton and willful disregard of Plaintiff's reputation and rights. The statements were made to persons having no interest in the subject of the statements. Conley and McSimmons acted with actual knowledge of falsity, and out of common law malice and actual malice, when making the statements.

19. Prior to Conley's authoring and publishing the statements in paragraph 11, Conley failed to ascertain the truth of those statements. Conley wrote the statements with predetermined facts in mind, rather than an attempt to portray the truth. Conley intended the false innuendos and to affirmatively suggest that she endorsed or authenticated the false facts and inferences. Conley's authoring of the statements was neither accurate nor disinterested. Instead, Conley was motivated to write the alleged defamatory statements, in part, because of a history of hostility and

animosity Conley had for Plaintiff. For example, on or about November 14, 2013, Plaintiff received a Corrective Action Form for allegedly failing to cannulate (*i.e.*, insert a dialysis tube into) a patient and allowing Conley to perform the cannulation. Plaintiff disputed that Corrective Action Form on the basis that Plaintiff had directed Conley not to perform the cannulation, but Conley disregarded Plaintiff's instructions. Conley wrote the statements alleged as defamatory in paragraph 11 of this First Amended Complaint on November 19, 2013, which was one day after Plaintiff's termination of employment with Defendant on November 18, 2013; and upon information and belief, said defamatory statements were written to support reasons for Defendant's termination of Plaintiff's employment and/or to discredit Plaintiff in Plaintiff's then potential unemployment proceedings.

20. Prior to McSimmons' authoring and publishing the statements in paragraph 13, McSimmons failed to ascertain the truth thereby, but only wrote the statements with predetermined facts in mind, rather than attempt to portray the truth. McSimmons intended the false innuendos and to affirmatively suggest that she endorsed or authenticated the false facts and inferences. As stated on the Corrective Action Form (**Exhibit 3**), those statements formed the basis of a final written warning that was maintained in Plaintiff's personnel file. *See* **Exhibit 3** ("[W]e will be issuing [Plaintiff] a final written warning" and "**Note:** . . . A copy of this form is given to the employee and maintained in their personnel file."). McSimmons was motivated to write those statements by animosity and hostility towards Plaintiff in the workplace, displayed on McSimmons' first day of employment on August 26, 2013, when McSimmons stated to Plaintiff that her [McSimmons'] only reservation about accepting her position as Defendant's Clinical Manager was that Plaintiff was employed there. Since McSimmons' first day of employment,

she subjected Plaintiff to name-calling, disparaging remarks, and unfounded, vague accusations against Plaintiff by repeatedly calling Plaintiff a liar, untrustworthy, and lacking credibility.

21. The defamatory statements described in paragraphs 11 and 13 have caused, are causing, and will cause Plaintiff to be subjected to widespread public disgrace and scorn. The statements proximately caused, are causing, and are anticipated to continue to cause, Plaintiff special damages, as well as *per se* damages, including but not limited to pecuniary loss, damage to reputation and standing in the community, embarrassment, humiliation, and mental suffering.

22. Publication of such defamatory statements was intended to refer to Plaintiff and were so understood by those upon hearing them. Publication of the statements in paragraph 11 were intended to refer to Plaintiff and were so understood to refer to Plaintiff. *See* **Exhibit 4** (December 5, 2013 e-mail to Plaintiff: "There is no name attached but there is one line that makes it clear who this document is referring to (you)," referring to the line described in paragraph 11(a)). *See also*, **Exhibit 2** (December 4, 2013 and December 5, 2013 e-mail chain). Publication of the statements described in paragraph 13 were intended to refer to Plaintiff and were so understood to refer to Plaintiff, as the Corrective Action Form (**Exhibit 3**) states Plaintiff's name on the face of the document as the recipient of that Corrective Action Form.

23. The defamatory statements alleged herein were authored and published by Defendant, by and through its employees, acting within the scope of their employment. Upon information and belief, Conley authored the statements described in paragraph 11 using Defendant's computer system. Conley published those statements by e-mail to Defendant's other employees and to others using Defendant's computer system and e-mail system. Upon information and belief, Conley, in the conduct of her job responsibilities in the scope of her

employment, attached **Exhibit 1** containing those statements as part of company documents that were distributed to Defendant's employees and to third parties, using Defendant's computer system and e-mail system. In addition, McSimmons authored and published the statements described in paragraph 13 in the course of her job duties as Clinic Manager to discipline employees in the workplace, and approved of and endorsed those statements by publishing and maintaining the Corrective Action Form (**Exhibit 3**) containing those statements as part of Plaintiff's personnel file. The defamatory statements were published by Defendant with the actual, and apparent approval, and ratification, of the Defendant, and the statements proximately caused special and general damages to Plaintiff. Defendant failed to exercise due care to prevent the publication or utterance of the statements contained in the publications complained of. The statements proximately caused, are causing, and are anticipated to continue to cause, Plaintiff, *inter alia*, injury to reputation, embarrassment, humiliation, and emotional distress.

## Count I: Defamation *per se*

24. The plaintiff herein incorporates by reference into this count all of the allegations appearing elsewhere in this First Amended Complaint.

25. The statements referred to herein are defamatory *per se*, because they impute unfitness to perform duties of office or employment for profit and want of integrity in the discharge of duties of such office and the commission of a criminal offense for which Plaintiff could be indicted and punished. The statements, individually and taken together as a whole, prejudice Plaintiff in her profession, tending to injure her in her employment and profession, and cast her as being particularly unfit to be a Registered Nurse or Charge Nurse.

26. As a direct and proximate result of the statements by Defendant's employes, Conley and McSimmons, Plaintiff has suffered, and will in the future suffer, damages, including, *inter alia*, injury to her reputation, embarrassment, humiliation, and emotional distress, in amounts to be presumed at trial and/or in actual damages to be determined at trial.

### Count II: Defamation

27. The plaintiff herein incorporates by reference into this count all of the allegations appearing elsewhere in this First Amended Complaint.

28. The statements referred to herein have caused, are causing, and will cause Plaintiff injury to her reputation, good name, and have held, and will hold, her up to public scandal and/or ridicule, and have caused, are causing, and will cause her embarrassment, humiliation and mental suffering. The statements were calculated to, and do, hold Plaintiff up to public scorn, hatred, and ridicule; by such publication, Defendant did injure Plaintiff's reputation in the community at large. Plaintiff has been injured in reputation and good standing in the community in which Plaintiff lives.

29. The statements proximately caused Plaintiff to lose income.

30. As a direct and proximate result of the statements by Defendant's employes, Conley and McSimmons, Plaintiff has suffered, and will in the future suffer, damages, including, *inter alia*, injury to her reputation, embarrassment, humiliation, and emotional distress, in amounts to be determined at trial.

### Count III: Defamation *per Quod*

31. The plaintiff herein incorporates by reference into this count all of the allegations appearing elsewhere in this First Amended Complaint.

32. Defendant's statements referred to herein are defamatory *per quod*, because, with reference to the extrinsic facts, the statements individually and taken together as a whole proximately caused injury to Plaintiff's reputation .

33. As a direct and proximate result of the statements by Defendant's employees, Conley and McSimmons, Plaintiff has suffered, and will in the future suffer, damages, including, *inter alia*, injury to her reputation, embarrassment, humiliation, and emotional distress, in amounts to be determined at trial.

### Prayer for Relief

WHEREFORE, Plaintiff requests this Court to enter a judgment for the plaintiff, Melanie J. Sepmoree, against the defendant, Bio-Medical Applications, Inc., d/b/a "Fresenius Medical Care Dominion," in the amount of FIVE MILLION DOLLARS ($5,000,000.00) as compensatory damages, plus pre-judgment and post-judgment interest at the maximum rate(s) allowed by law on the entire judgment from the date of November 5, 2013, until paid.

**Plaintiff Demands Trial by Jury**.

                                                  MELANIE J. SEPMOREE

                                                  By: /s/ Vivile R. Dietrich
                                                         Of Counsel

Jeremiah A. Denton III, Esq.
VSB #19191
Vivile R. Dietrich, Esq.
VSB #72893
Rhiannon M. Jordan, Esq.
VSB #78650
Jeremiah A. Denton IV, Esq.
VSB #83818


Jeremiah A. Denton III, P.C.
477 Viking Drive, Suite 100
Virginia Beach, VA 23452
Tel: 757/340-3232
Fax: 757/340-4505
jerry@jeremiahdenton.com
viv@jeremiahdenton.com
rhiannon@jeremiahdenton.com
jake@jeremiahdenton.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on the 10th day of September, 2014, the foregoing Plaintiff's First Amended Complaint was electronically filed with the Clerk of the Court using this CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Kristina H. Vaquera (VSB No. 43655)
    Ramsay C. McCullough (VSB No. 87014)
    Jackson Lewis, LLP
    500 E. Main St., Suite 800
    Norfolk, VA 23510
    Tel.: (757) 648-1448
    Fax: (757) 648-1418
    E-mail: kristina.vaquera@jacksonlewis.com
    E-mail: ramsay.mccullough@jacksonlewis.com
    *Counsel for Defendant, Bio-Medical Applications of Virginia, Inc.*

                                                    /s/ Vivile R. Dietrich
                                               Jeremiah A. Denton III, Esq.
                                               VSB #19191
                                             Vivile R. Dietrich, Esq.
                                             VSB #72893
                                             Rhiannon M. Jordan, Esq.
                                             VSB #78650
                                             Jeremiah A. Denton IV, Esq.
                                             VSB #83818
                                             Jeremiah A. Denton III, P.C.
                                             477 Viking Drive, Suite 100
                                             Virginia Beach, VA 23452
                                             Tel: 757/340-3232
                                             Fax: 757/340-4505
                                             jerry@jeremiahdenton.com
                                             viv@jeremiahdenton.com

rhiannon@jeremiahdenton.com
jake@jeremiahdenton.com
*Counsel for the plaintiff, Melanie J. Sepmoree*